# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00125-CV

**Austin Periodontal Associates, Inc. f/k/a C. Leonard Dolce, D.D.S., M.S., Inc.; and Charles Leonard Dolce, D.D.S., M.S., Individually and d/b/a Periodontal Associates, Appellants**

**v.**

**Kirsten Husak, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-03-003418, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This dental malpractice case arises from the bilateral severance of appellee Kirsten Husak's lingual nerve during a procedure to remove her third molars.[1] Appellant Charles Leonard Dolce, D.D.S., M.S., performed the procedure. Husak brought suit alleging negligence against Dr. Dolce and his employer, appellant Austin Periodontal Associates, Inc. f/k/a C. Leonard Dolce, D.D.S., M.S., Inc.[2] After an eight-day jury trial, the jury found Dr. Dolce negligent and awarded

---

[1] According to the testimony at trial, the lingual nerve provides the sense of taste and touch to the anterior two-thirds of the tongue and is located on the tongue side of the lower third molars on both sides of the mouth. Third molars are commonly referred to as wisdom teeth and are the last tooth of the full set on each half of the jaw. Unless otherwise specified, we draw on trial testimony for technical/medical definitions and explanations.

[2] We refer to appellants Austin Periodontal Associates, Inc. f/k/a C. Leonard Dolce, D.D.S., M.S., Inc. and Charles Leonard Dolce, D.D.S., M.S., individually and d/b/a Periodontal Associates

Husak damages. The trial court rendered judgment on the verdict. In five issues, appellants contend that the trial court's judgment should be reversed and that they should be granted a new trial. For the reasons that follow, we overrule their issues and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Husak's general dentist Tommy Thomson referred Husak to Dr. Dolce to have crown lengthening done on two of her teeth.[3] During the preoperative appointment, Dr. Dolce and Husak discussed and agreed that Dr. Dolce would remove her third molars at the same time.

The surgery took place in April of 2002. During the removal of her third molars, Dr. Dolce bilaterally severed Husak's lingual nerve. He also broke a burr[4] in her mouth and did not inform Husak after the surgery that he was unable to find the broken piece. From the surgery, Husak suffered infection, dry socket, and total anesthesia of the front two-thirds of her tongue. Dr. Dolce referred Husak to Dr. James Fuselier, an oral surgeon in Austin, for further treatment, including to treat her infection. Dr. Fuselier referred Husak to Dr. Donald Cohen, an oral surgeon in Houston with postsurgical training in oral and maxillofacial surgery. Dr. Cohen attempted microsurgical repair on the left side of Husak's lingual nerve in August and the right side in October, but the repairs were unsuccessful.

---

collectively as "Austin Periodontal" or "appellants." We refer to appellant Charles Leonard Dolce, D.D.S., M.S., as "Dr. Dolce."

[3] The crown lengthening did not involve Husak's third molars but two of her other teeth. Crown lengthening is a procedure that is designed to provide more tooth structure above the gum line before placing a crown on a tooth.

[4] A burr is the rotary cutting portion of the drill.

Husak sued Austin Periodontal alleging multiple theories of negligence in bilaterally severing her lingual nerve. Husak's theories included that the removal of her third molars was medically unnecessary and that Dr. Dolce negligently removed her third molars by his incisions or, alternatively, by his drilling. Husak alleged that Dr. Dolce's incisions were below the standard of care because they were made in an area of her mouth where the lingual nerve was known to be located and that the incisions caused her injury.[5] Alternatively, Husak alleged that Dr. Dolce improperly drilled into the area of her mouth where the lingual nerve was known to be located and that the drilling was the cause of her injury.

At trial, Husak and her former boyfriend, John McCarthy, testified concerning Husak's physical and mental condition before and after the surgery and the effect the injury has had on her. Husak also presented expert opinion testimony from Dr. Cohen, Dr. Thomson, and Dr. Robert W. Staley, Jr., D.D.S., an oral and maxillofacial surgeon from Oregon. Appellants' defensive theory to the jury was that severance of the lingual nerve was an inherent risk of the procedure, that Dr. Dolce's technique was within the standard of care, and that he severed Husak's lingual nerve during the procedure because the nerve was in anatomically aberrant locations on both sides of her mouth. Dr. James T. Mellonig, D.D.S., a periodontist and professor at the University of Texas Health Science Center in San Antonio, testified as appellants' expert.

The trial court submitted a broad form negligence question to the jury—"Did the negligence, if any, of C. Leonard Dolce, D.D.S., M.S., proximately cause the injury in question?"

---

[5] The lingual nerve's location varies from person to person, but there are areas in the mouth where the lingual nerve is known to be located. The experts at trial agreed that the procedure for removing third molars is specifically designed to avoid the known areas.

The jury answered, "Yes." The jury awarded the following amounts in response to the damages question: (i) $45,879.75 for medical care expenses in the past; (ii) $50,000 for physical pain and mental anguish sustained in the past; (iii) $200,000 for mental anguish that, in reasonable probability, Husak will sustain in the future; (iv) $19,500 for physical impairment sustained in the past; (v) $150,000 for physical impairment that, in reasonable probability, Husak will sustain in the future; and (vi) $6,000 for loss of earning capacity sustained in the past.[6] Based on the verdict and the trial court's ruling as a matter of law that Dr. Dolce was acting within the course and scope of his employment, the trial court entered judgment against appellants for $503,923.59, which included the damages found by the jury plus pre-judgment interest. This appeal followed.

**ANALYSIS**

Austin Periodontal contends that the judgment should be reversed and a new trial granted because (i) the trial court abused its discretion by excluding certain testimony by Dr. Cohen, the subsequent treating periodontist; (ii) the trial court abused its discretion by refusing to provide a "bad result" instruction in the jury charge; (iii) the evidence was legally and factually insufficient to support causation and damages; (iv) the trial court abused its discretion by ruling as a matter of law that Dr. Dolce was acting within his scope of employment when he performed the surgery; and (v) the trial court abused its discretion in redacting informed consent forms and limiting informed consent evidence.

---

[6] The jury did not award any amount for disfigurement sustained in the past.

4

*Standard of Review*

Appellants' complaints on appeal include that the trial court abused its discretion in excluding evidence and in denying a requested jury instruction. *See Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006) (admission or exclusion of expert evidence is a matter within the trial court's discretion); *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000) (error in the jury charge is reviewed under an abuse of discretion standard). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downing*, 197 S.W.3d at 304-05; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995).

To reverse a judgment based on a claimed error in either an evidentiary ruling or in the jury charge, a party must show that the error probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (exclusion of evidence); *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002) (error in refusing an instruction); *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 387 (Tex. App.—Austin 2001, pet. denied) (error in jury charge). To determine whether excluded evidence probably resulted in an improper judgment, we review the entire record and usually require the complaining party to demonstrate that the judgment turns on the evidence that was excluded. *Interstate Northborough*, 66 S.W.3d at 220; *Alvarado*, 897 S.W.2d at 753-54; *Perez v. Embree Constr. Group, Inc.*, 228 S.W.3d 875, 884 (Tex. App.—Austin 2007, pet. filed) (for improper exclusion of evidence to be reversible, "erroneously excluded evidence must have been controlling on a material issue;" quoting *Elliott v. Elliott*, 21 S.W.3d 913, 922 (Tex. App.—Fort Worth 2000, pet. denied)). "Error in the jury charge is reversible if, when viewed in light of all the circumstances,

5

it amounts 'to such a denial of rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment.'" *Niemeyer*, 39 S.W.3d at 387 (quoting *Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 110 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

Appellants also raise challenges to the legal and factual sufficiency of the evidence. A legal sufficiency challenge may only be sustained when the record discloses one of the following situations:

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)). In determining whether a finding is supported by legally sufficient evidence, we view the evidence in the light most favorable to the finding, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 807. We indulge every reasonable inference that would support the finding. *Id.* at 822; *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 552 (Tex. 2004).

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence presented at trial, including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We

set aside a finding for factual insufficiency if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 709 S.W.2d at 176.

### *Exclusion of Deposition Excerpts from Dr. Cohen*

In the first issue, Austin Periodontal complains that the trial court abused its discretion in excluding two passages from Dr. Cohen's testimony that went to his credibility.[7] Austin Periodontal complains that the jury should have been allowed to hear Dr. Cohen's testimony that he had performed only one other lingual nerve repair as a lead surgeon and that he also testified for the plaintiff in that case. In the first passage, Dr. Cohen testified that he had been involved in surgical repair of the lingual nerve in approximately seven other cases and that he worked with another surgeon on those cases. Austin Periodontal, however, agreed to exclude the first passage after Husak objected to its inclusion. In the second passage, Dr. Cohen testified that he served as the lead surgeon in one other lingual nerve repair case and that he was hired to serve as the plaintiff's expert in that case. In response to Husak's objection to the second passage's inclusion, the trial court overruled the objection except for one question and answer.[8]

---

[7] Dr. Cohen's testimony was presented by video deposition.

[8] The question and answer that the trial court excluded concerned the other lingual nerve damage case in which Dr. Cohen was the lead surgeon:

Q:   And you went further and said that you believe that the original treating, whether it be dentist or oral surgeon, was actually negligent in—

A:   From what I—you know, from what I recall—because I know that case was involved in litigation also. I can't specifically tell you what I dictated into the operative report at that time or what my findings were or my records because it was quite a while ago.

7

Despite the favorable ruling on the second passage, Austin Periodontal did not attempt to offer the passage into evidence but made an offer of proof of both passages later in the trial. Austin Periodontal made the offer of proof during a discussion with the trial court and opposing counsel concerning how the jury would be allowed to view deposition testimony. After the parties agreed that the deposition testimony would be available for the jury to review by DVD but not accompanied by a written transcript, Austin Periodontal made the offer of proof of the two passages:

| Appellants' counsel: | . . . I want to make another offer of proof on Doctor Cohen's testimony. It's on page 76 line 9 through page 79 line 14 [first passage]. Page 106 line 2, page 107, line 4 [second passage]. |
|---|---|
| The court: | Objection or — |
| Appellants' counsel: | Offer of proof. This is the testimony regarding that he's been the lead surgeon in two cases. And in both cases he wrote a[n] operative report, both cases hired as expert. I actually just took the [deposition] pages out. Wanted to make an exhibit so it's clear what I am offering. Your Honor I am offering defendant's exhibit 65. |
| The court: | 65 will be admitted in the pile that doesn't go to the jury. . . . |

In the discussion with the trial court, Austin Periodontal did not attempt to admit the exhibit of the passages as evidence or request a ruling from the trial court on whether the evidence should be excluded, but requested that the trial court admit the exhibit as an offer of proof. *See* Tex. R.

Evid. 103.  The trial court granted Austin Periodontal's request and admitted the exhibit as an offer of proof.

Because the trial court only excluded one question and answer out of the second passage, we limit our review to this one question and answer.  *See* Tex. R. App. P. 33.1(a) (to preserve error for the exclusion of evidence, a party must seek to introduce the evidence during the evidentiary portion of the trial and obtain an adverse ruling); *Estate of Veale v. Teledyne*, 899 S.W.2d 239, 242-43 (Tex. App.—Houston [14th Dist.] 1995, writ denied).  We conclude that appellants have failed to demonstrate that the judgment turned on this narrow portion of testimony.  *See* Tex. R. App. P. 44.1(a); *Interstate Northborough*, 66 S.W.3d at 220; *Alvarado*, 897 S.W.2d at 753-54; *Perez*, 228 S.W.3d at 884.  We overrule Austin Periodontal's first issue.

### *"Bad Result" Jury Instruction*

In the second issue, appellants contend that the trial court abused its discretion in refusing to provide the jury their proposed "bad result" instruction:

> A finding of negligence may not be based solely on evidence of bad result to the patient in question, but such a bad result may be considered by you, along with other evidence, in determining the issue of negligence; you shall be the sole judge of the weight, if any, to be given any such evidence.

The proposed instruction tracks the pattern jury charge bad result instruction for actions filed before September 1, 2003.  *See* Texas Pattern Jury Charges—Malpractice, Premises, & Products PJC 50.7 (2006 ed.) (Evidence of Bad Result).  Pursuant to the applicable statute, however, it was within the trial court's sole discretion to determine whether the instruction was reasonably applicable to the

9

facts and whether to include it. *See* former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 7.02(c), Act of May 24, 1989, 71st Leg., R.S., ch. 1027, § 28, 1989 Tex. Gen. Laws 4128, 4145 (repealed Sept. 1, 2003) ("Jury Instruction Authorized in Certain Cases");[9] *see also Williams v. Viswanathan*,

---

[9] The former statute read:

Sec. 7.02. JURY INSTRUCTION AUTHORIZED IN CERTAIN CASES.

(a) In a jury trial involving a health care liability claim against a physician or hospital for injury to or death of a patient in which the court determines that the following instruction is reasonably applicable to the facts, the court shall provide the following instruction in the court's charge to the jury:

"A finding of negligence may not be based solely on evidence of a bad result to the patient in question, but such a bad result may be considered by you, along with other evidence, in determining the issue of negligence; you shall be the sole judges of the weight, if any, to be given to any such evidence."

(b) Nothing in Subsection (a) of this section shall affect the existing law regarding the applicability or nonapplicability of the doctrine of res ipsa loquitur to a health care liability claim.

(c) The determination of whether the instruction authorized by Subsection (a) of this section is reasonably applicable to the facts shall be made by the trial court in its sole discretion, and such determination by the trial court shall be reviewable by an appellate court only for an abuse of such discretion.

Act of May 24, 1989, 71st Leg., R.S., ch. 1027, § 28, 1989 Tex. Gen. Laws 4128, 4145 (repealed Sept. 1, 2003) ("Jury Instruction Authorized in Certain Cases").

Because Husak filed suit prior to September 1, 2003, former article 4590i of the Medical Liability and Insurance Improvement Act governs. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899 (prior law remains in effect for actions filed before September 1, 2003). Under the current statute, a trial court on "any action on a health care liability claim that is tried by a jury" must include a "bad result" instruction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.303(e)(2) (West 2005).

10

64 S.W.3d 624, 628-29 (Tex. App.—Amarillo 2001, no pet.) (submission of bad result instruction reviewed under abuse of discretion standard).

Husak contends that the statute does not apply because Dr. Dolce did not present evidence that he was a physician and Austin Periodontal Associates, Inc. did not present evidence that it was a hospital.[10] We agree. The former statute is expressly limited to jury trials "involving a health care liability claim against a physician or hospital." *See* former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 7.02(a). Dr. Dolce testified that he was a dentist and periodontist and that he practiced his profession through Austin Periodontal Associates, Inc. A physician is defined as a "person licensed to practice medicine in this state" or a professional association or other legal entity organized by an individual physician or group of physicians. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(23) (West 2005); former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(8), Act of June 16, 1977, 65th Leg., R.S., ch. 817, § 1.03, 1977 Tex. Gen. Laws 2039, 2041 (repealed Sept. 1, 2003). A hospital is defined as a duly licensed public or private institution as defined in chapter 241 of the health and safety code or licensed under chapter 577 of the health and safety code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(16) (West 2005); former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(5) (repealed Sept. 1, 2003). In these circumstances, we conclude that the trial court did not abuse its discretion in denying appellants' proposed instruction. *See Louisiana-Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998) (trial courts have great latitude and considerable

---

[10] Husak also argued to the trial court that a bad result instruction should not be given because the court had refused her requested *res ipsa locutor* instruction. She does not make this same argument on appeal.

11

discretion to determine necessary and proper jury instructions). We overrule Austin Periodontal's second issue.

***Sufficiency of the Evidence***

In the third issue, Austin Periodontal contends that the evidence was legally and factually insufficient to support the jury's judgment and damage award. Specifically, Austin Periodontal contends that the evidence was legally and factually insufficient to support the jury's finding of negligence because there was no evidence or insufficient evidence of (i) cause in fact, and (ii) the jury's findings on damages for physical pain and mental anguish sustained in the past, for future mental anguish, and for future physical impairment. We first consider whether the evidence was legally and factually sufficient to support the jury's finding of cause in fact.

   1.  *Cause In Fact*

Cause in fact is a component of proximate cause in a negligence action. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).[11] Cause in fact is not established "where the defendant's negligence does no more than furnish a condition

---

[11] The elements of a negligence cause of action are the existence of a legal duty, breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The two elements of proximate cause are cause in fact and foreseeability. *Id.* The proximate cause instruction to the jury read:

> "Proximate cause," when used with respect to the conduct of C. Leonard Dolce, D.D.S., M.S., means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a dentist using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

which makes the injuries possible." *Id.* at 799. Cause in fact is established "when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id*. The "causal connection" must be "based upon 'reasonable medical probability,' not mere conjecture, speculation or possibility." *Bradley v. Rogers*, 879 S.W.2d 947, 954 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (quoting *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988)). "Reasonable medical probability" means the injury "was more likely than not" a result of the negligent action. *Id.* at 954. To prove reasonable medical probability, reasonable inferences are permissible, and a plaintiff is not required to exclude every other reasonable hypothesis. *Id.*

Austin Periodontal contends that there is a lack of evidence of the location of Husak's lingual nerve when it was severed and of what actually caused the nerve's severance. Although Dr. Staley and Dr. Cohen testified Husak's injuries occurred from Dr. Dolce's actions that fell below the standard of care, Austin Periodontal contends that neither expert testified definitively to the actual action that caused the severance—whether it was the incision, the drilling, or some other action—or to the precise location that Husak's lingual nerve was severed on either side of her mouth. We conclude that the record contains more than a scintilla of evidence to support the jury's finding of cause in fact. *See City of Keller*, 168 S.W.3d at 810; *Gragg*, 151 S.W.3d at 552.

Dr. Cohen testified that in his opinion, based upon reasonable medical probability, Dr. Dolce's technique caused Husak's permanent damage. Dr. Cohen testified that Husak's injuries were caused by Dr. Dolce's procedures that fell below the standard of care, including the incisions that he made "straight back," his retraction of the lingual flap, the burring and the removal of bone on the lingual side, and traumatizing the tissue. Dr. Cohen testified that the line of scar tissue on

the left side of Husak's mouth, the first side that he attempted to repair, was not consistent with a standard lateral incision and that the standard lateral approach should have avoided even the "most odd of anatomical variations." According to Dr. Cohen, the lingual nerve is in the same area in everyone's mouth but there are individual variations within that area and that the standard lateral incision is designed to avoid the known areas. The standard lateral incision is made over bone, goes back from the second molar, and curves toward the cheek or buccal to avoid the known areas. Dr. Cohen also testified that Dr. Dolce's injection of anesthesia made during the procedure and Husak's subsequent infection did not cause Husak's injuries to her lingual nerve.

On cross-examination, Dr. Dolce testified that he caused the severance of the nerve bilaterally during the procedure to remove Husak's third molars:

Q: And in the opening of this case a couple of days ago, your attorney stated that you never disputed that you caused Mrs. Husak's lingual nerve injury; is that correct?

A: Right.

Q: And do you agree?

A: I agree.

Q: And you agree that you did something that caused her injuries, correct?

A: Yes.

Dr. Mellonig also testified that Dr. Dolce's surgical instruments caused Husak's injury and that the lingual nerve was probably severed by the "blade of the knife" in the initial incision. He testified that was the only way to sever the nerve because "the nerve is very—very tough, so it had to be cut."

Husak was not required to disprove every reasonable hypothesis of the cause in fact

of the severance. *See Bradley*, 879 S.W.2d at 954. Husak also was not required to choose between alternative theories of how Dr. Dolce severed the nerve. *See Webb v. Jorns*, 488 S.W.2d 407, 410-11 (Tex. 1972) (plaintiff proved prima facie negligence case by evidence that cardiac arrest caused by overdose or lack of proper oxygenation of the patient). It was for the jury to resolve inconsistencies of any one witness to determine the cause of the injury. *See McGilliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Webb*, 488 S.W.2d at 411. We conclude the evidence was legally sufficient to support the jury's finding of cause in fact.

Reviewing all the evidence presented at trial, we also conclude that the evidence on cause in fact was not "so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust." *See Cain*, 709 S.W.2d at 176. Dr. Dolce testified on cross-examination that his sole defense was that Husak's injury occurred in the absence of negligence because Husak's nerve was in an aberrant location on both sides of her mouth:

> Q:     Now, you're claiming in this suit, as your only defense to you slicing through her nerves, that her nerves were aberrant on both sides. Correct?
>
> A:     Yes.

To support the aberrant location defense, appellants relied on Dr. Dolce's testimony and Dr. Cohen's surgery report from the attempted repair of the left side of Husak's mouth. Dr. Dolce testified that the body generally mirrors itself between the right and left side, and appellants contend that Dr. Cohen in his report found Husak's lingual nerve in an aberrant location on the left side—within the third molar socket. Based on the nerve's location within the third molar socket on the left side then, appellants contend that the location of Husak's lingual nerve on the right side also was in an

15

aberrant location, and that the nerve was severed because it was in an aberrant location on both sides, not because Dr. Dolce was negligent. None of the experts, however, were aware of another case in which a patient's lingual nerve was severed bilaterally. The testimony also was disputed regarding the interpretation and implications of Dr. Cohen's statement in his report regarding the nerve's location in the scar tissue when he performed the subsequent repair. Dr Cohen testified that when he attempted the repair on the left side, he did not find an abnormal course of Husak's lingual nerve:

> Q:     When you dissected her nerve, did you find any abnormal course of her nerve on the left side?
>
> A:     No.

Dr. Cohen further provided extensive testimony that the procedure for removing third molars is designed to avoid all known aberrations. Dr. Staley also testified that the procedure is designed to avoid the lingual nerve, that the lingual nerve has never been demonstrated to be in the location Dr. Dolce claimed, and that if Husak's nerve was in that location, Husak would have been aware of the presence of the nerve because she would have experienced pain and discomfort in a manner inconsistent with her actual history.[12]

---

[12] Dr. Staley testified:

And the nerve is not a small nerve. It's about the size of a piece of spaghetti. It's not like it's a fine hair of a nerve. If it happened to be in that area the patient would know it. Every time they chewed something hard back there; piece a crust, or something. And they happen to push on that they would feel a[n] electric shock on the tongue. The patient would know that. . . . The nerve has never been demonstrated to loop back there. It can be high. It can be low. Or it can be out this way, but it never comes up here. That's specifically the reason why the surgery for the incision part of it, has been designed to make the incision out there.

It was within the jury's province to conclude that Husak's nerve was located in a known area and to credit the expert opinion testimony that it was Dr. Dolce's procedures that fell below the standard of care that caused the injury. *See Bronwell v. Williams*, 597 S.W.2d 542, 546-47 (Tex. Civ. App.—Amarillo 1980, writ ref'd n.r.e.) (fact issue for jury's resolution whether common duct in normal or abnormal location); *see also Grider v. Naaman*, 83 S.W.3d 241, 245-46 (Tex. App.—Corpus Christi 2002), *rev'd on other grounds*, 126 S.W.3d 73, 74-75 (Tex. 2003) (judgment for defense in medical malpractice suit reversed because no evidence to support sole defense that patient had abnormal anatomy). The jury heard a range of expert testimony concerning the cause of Husak's injury. It was within the province of the jury to weigh the expert opinion testimony and to determine which expert witness should be credited. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (jury remains sole judge of witnesses' credibility and the weight to be given their testimony); *McGilliard*, 722 S.W.2d at 697 (jury can choose to believe one witness over other witnesses or resolve inconsistencies in their testimony). We conclude the evidence was legally and factually sufficient to support a finding of cause in fact. We next consider whether the evidence was legally and factually sufficient to support the jury's findings on damages.

### 2.    *Damages*

Austin Periodontal contends that the evidence was legally and factually insufficient to support the damages award of $50,000 for physical pain and mental anguish sustained in the past, $200,000 for mental anguish that in reasonable probability Husak will sustain in the future, and $150,000 for physical impairment that in reasonable probability Husak will sustain in the future. Austin Periodontal's theory to the jury was that, although Husak suffered a severe injury, she has

17

recovered and is now maintaining a lifestyle similar to that before her injury. Austin Periodontal contends that Husak does not intend to seek counseling for the injury, that she has regained some sensation and taste in her tongue after the surgery, that her eating habits are back to normal, that she took a course in conversational Japanese, and that she has decided to pursue a graduate degree. We conclude that the evidence is legally and factually sufficient to support the damages awarded.

As to the award of damages for physical pain, a jury is given considerable discretion in awarding amounts appropriate for such damages; there are no objective guidelines to assess the monetary equivalent of pain and suffering resulting from physical injury. *See Living Ctrs. of Tex., Inc. v. Penalver*, 217 S.W.3d 44, 54 (Tex. App.—San Antonio 2006, pet. dism'd). As to the award of damages for mental anguish, evidence of "'the nature, duration, and severity'" of a plaintiff's mental anguish and the substantial disruption of a plaintiff's daily routine support an award of damages for mental anguish. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (evidence found legally sufficient to support damages for mental anguish; quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

The award of $50,000 for past pain and mental anguish represents approximately $11,000 per year for the four and one-half years from the surgery to the time of trial. During that period, Husak had two subsequent operations to attempt the repair of her lingual nerve. Husak testified to her depression, pain, and anxiety during this period. She testified that she was unable to eat, sleep or open her mouth for weeks after the surgery and that she could not speak correctly for months despite having a job that required her to make presentations. Husak testified what it was like

18

for her to eat after the surgery[13]—that she has no taste, that she cannot tell hot from cold, and that

---

[13] Husak testified as to her diet after the surgery:

Q:      This may sound strange, but some people may think this is a neat diet.  Can you tell me what kind of diet you think this is?

A:      This is a forced diet for the rest of my life.  I didn't need to lose any weight, and I have.  And I don't have a choice now.  I can't go off this diet.  It's going to last forever.

Q:      Can you tell me what tomatoes taste like?

A:      They taste wet.

Q:      What about bread?

A:      Well, I can't even eat chunky bread, like French bread, because I run the risk of chomping on my tongue.  But, in any case, there's no taste to it.  It's just lumps.

Q:      What about milk?

A:      Milk tastes exactly the same as water.

Q:      What about Diet Coke?

A:      Tastes like bubbles.

Q:      What about carrots?

A:      Well, I have to chop them up very small, again, to make sure I'm not chomping on my tongue.  I get some sort of a muted memory of a taste of them, but not—nothing like what it used to be.

* * *

Q:      Do you order pizza anymore?

A:      No.

19

she has had to avoid many foods because, in trying to chew them, she cannot feel when she bites her tongue. She testified what it has been like for her to talk—that when she gets tired, she has a hard time enunciating words, and she bites her tongue and does not know it, causing blood to pool in her mouth. McCarthy testified about his observations of Husak's physical and mental condition before and after the surgery, and his testimony was consistent with Husak's. Based on this evidence, we conclude there was more than a scintilla of evidence to support the damage finding for past pain and mental anguish. *See City of Keller*, 168 S.W.3d at 810; *Gragg*, 151 S.W.3d at 552.

Reviewing all the evidence, we also conclude that the jury's finding is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176. Austin Periodontal presented evidence that Husak stated during her treatment that she thought that her senses in her tongue were improving and that she has continued to lead an active life. Dr. Cohen, however, explained Husak's sensations during her treatment as "phantom."

---

Q:     Why not?

A:     There's a possibility of burning myself with the hot cheese, and I can't taste the cheese anyway. I can't taste the toppings properly. There's—there's just—it's too depressing. It's—there's no point.

* * *

Q:     Would you tell the jury what it's like to live with a numb tongue, not able to tell hot or cold with your tongue, and not ever able to taste your food normally?

A:     It's really miserable because I know that when I get older and my other senses aren't working so well, I'll get no pleasure out of my food. I get no pleasure out of it now. It's embarrassing to talk to people about, and it's never going to end.

20

Husak's activities after her injury, including pursuing a graduate degree and taking conversational Japanese, do not negate the pain and the mental anguish that Husak experienced from her injury. We conclude the evidence was legally and factually sufficient to support the jury's damage award for past pain and mental anguish.[14]

As to the jury award of $200,000 for future mental anguish, the jury heard evidence that at the time of the trial, Husak was expected to live an additional 44.5 years. The amount awarded for future mental anguish represents approximately $4,500 per year for the remainder of her life. Dr. Staley testified that he tested Husak's sense of touch at the time of trial by blindfolding her and then sticking a needle in her tongue and that she did not flinch. Dr. Dolce witnessed the test and confirmed that she did not flinch. Dr. Cohen testified that the attempted repairs were unsuccessful, that Husak's injury was permanent, and what Husak's life will be like:

> It's—it's just losing a part of your body. It's like if you don't have any feeling in your hand, and that—which most people could—I mean, like, if—when your hand falls asleep, it's pretty disconcerting that you look over and you touch it and you feel you touch it, but you don't feel that it's there. Well, how would that be if it was like that all the time.

Husak testified to her continued depression and anxiety. Husak testified that she is depressed by the smell of food, miserable and embarrassed and that "it's never going to end."

Because the injury is permanent, there was evidence that Husak's daily routine will remain disrupted and that she will continue to have mental anguish in the future, including from the

---

[14] In closing arguments, appellants' counsel suggested to the jury an award of $50,000 for past pain and mental anguish assuming a finding of negligence.

21

broken burr that remains in her mouth. On this record, we conclude there is more than a scintilla of evidence to support the damage finding for future mental anguish. *See City of Keller*, 168 S.W.3d at 810; *Gragg*, 151 S.W.3d at 552. Although Austin Periodontal provided evidence that Husak does not intend to seek counseling, we conclude that the damage award for future mental anguish from Husak's injury is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176.

As to the jury's award for future physical impairment of $150,000, this amount represents approximately $3,400 per year for the remainder of Husak's life. To recover damages for physical impairment, a plaintiff must show that the effect of the physical impairment is "substantial and extend[s] beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity." *See Patlyek v. Brittain*, 149 S.W.3d 781, 786 (Tex. App.—Austin 2004, pet. denied) (quoting *Golden Eagle*, 116 S.W.3d at 772). Recoverable damages for physical impairment include damages for the loss of a plaintiff's former lifestyle or "loss of enjoyment of life." *See id.* at 785 (quoting *Golden Eagle*, 116 S.W.3d at 764-65, 772). The focus is on a plaintiff's ability to engage in specific non-work related activities—whether the impediments are obvious or whether the plaintiff presented evidence of non-work activities that the plaintiff can no longer perform. *Id*. at 787.

Husak's impediments are obvious and substantial. After the surgery, Husak lost the ability to use her tongue for cleaning and for taste or to identify things in her mouth. At the time of trial, Husak testified that she continues to have difficulty eating and communicating. Husak also presented evidence that she no longer engages in non-work related activities that she participated in

before her injuries. Husak and McCarthy described Husak's life prior to the severance of her lingual nerve as socially active, including her hobbies of going out to eat with friends, gourmet cooking, and strenuous exercise and bicycling. Husak testified that she no longer enjoys or participates in these hobbies. McCarthy testified that Husak's only hobby after the surgery is reading. We conclude that there is more than a scintilla of evidence to support the finding of damages for future physical impairment. *See City of Keller*, 168 S.W.3d at 810; *Gragg*, 151 S.W.3d at 552. Although Austin Periodontal provided evidence that Husak is pursuing a graduate degree and taking a conversational class in Japanese, we conclude that the damage award for future physical impairment is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176.

Having found the evidence legally and factually sufficient to support the jury's finding of cause in fact and the amount of damages awarded, we overrule Austin Periodontal's third issue.

### Scope of Employment

In the fourth issue, Austin Periodontal alleges that the trial court abused its discretion by ruling as a matter of law that Dr. Dolce was within the course and scope of his employment when he extracted Husak's third molars.

When reviewing a directed verdict on a material question presented, we determine whether there is any evidence of probative force that raises a fact issue. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). We consider all the evidence in the light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and

23

inferences and giving the party the benefit of all reasonable inferences created by the evidence. *Id.* If there is any conflicting evidence of probative value, the directed verdict is improper and the case must be reversed and remanded for jury determination of that issue. *Id*.

Husak sued Austin Periodontal Associates, Inc. as the legal entity vicariously liable for Dr. Dolce's negligent acts. Under the theory of respondeat superior, an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of employment. *See Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). During cross-examination, Dr. Dolce testified that he was employed by C. Leonard Dolce, D.D.S., Inc., at the time he performed the procedure on Husak, and that he was acting within the scope of his employment:

> Q: Were you within the scope and employment of the corporation at the time?
>
> A: Scope and employment? Yes. The corporation—I mean, I'm practicing my profession in the corporation.
>
> Q: Right. And what I'm trying to get at is that you weren't doing something that you weren't supposed to be as an employee of the corporation at the time that you removed her teeth.
>
> A: No.

Appellants did not offer contradictory evidence that Dr. Dolce was doing something other than practicing dentistry in the furtherance of his employer's business when he performed the procedure on Husak.[15] We conclude that the trial court did not abuse its discretion in ruling as a matter of law

---

[15] Dr. Dolce testified that he changed the entity that he practiced his profession through from C. Leonard Dolce, D.D.S., Inc. to Austin Periodontal Associates, Inc. shortly after Husak's

that Austin Periodontal Associates, Inc. was vicariously liable for Dr. Dolce's negligence. We overrule Austin Periodontal's fourth issue.

*Informed Consent*

In the fifth issue, Austin Periodontal contends that the trial court abused its discretion in refusing to admit the informed consent forms of Dr. Cohen and Dr. Dolce and evidence that Dr. Dolce provided Husak with an informed consent form before the procedure to extract her third molars. The consent forms included damage to nerves and numbness as inherent and potential risks. Austin Periodontal contends that this evidence was relevant to the issue of whether Husak's injury could have occurred in the absence of negligence.

But, Austin Periodontal was allowed to offer evidence of Husak's informed consent and the consent forms. The jury heard testimony from Dr. Dolce that Husak signed his consent form. The redacted consent forms of Dr. Cohen and Dr. Dolce were also admitted as exhibits, and the admitted portions of the forms included the listed risks. Dr. Dolce's redacted form included in the listed "Principle Risks and Complications" that the patient could have "transient but occasional permanent numbness of the . . . tongue." Similarly, Dr. Cohen's redacted form provided:

> Dr. Cohen has explained to me that there are certain inherent and potential risks in any treatment plan or procedure, that may include, but not necessarily be limited to . . . [i]njury to the nerves of the jaw resulting in numbness or tingling of the lip, chin, gums, cheek, teeth and/or tongue on the operated side; this may persist for several weeks, months, or in remote instances permanently.

---

operation. From his testimony, the entity at the time the procedure was performed was C. Leonard Dolce, D.D.S., Inc., and, at the time of trial, the entity was Austin Periodontal Associates, Inc. Appellees do not contend that Husak sued the incorrect employer.

The record confirms that appellants were allowed to present this evidence[16] on informed consent and inherent risks to the jury to support their defensive theory that the injury could have occurred in the absence of negligence.[17]

We also cannot conclude that the trial court abused its discretion by redacting the consent forms of Dr. Dolce and Dr. Cohen or that any excluded evidence on informed consent was controlling on a material issue to support a finding that the exclusion probably resulted in an improper judgment. *See Perez*, 228 S.W.3d at 884. Husak's theories of recovery did not include that Dr. Dolce failed to inform her of the risks of the procedure. The controlling issue was not whether she received information about the risks of the procedure, but whether Dr. Dolce's negligence caused the severance of her lingual nerve. Austin Periodontal was allowed to present to the jury the language from both consent forms that a possible risk was permanent numbness to the tongue. We overrule Austin Periodontal's fifth issue.

---

[16] To the extent appellants complain about the exclusion of other evidence on informed consent, we conclude that they failed to preserve error. *See* Tex. R. App. P. 33.1(a). During the motion in limine hearing, the trial court granted Husak's motion regarding evidence of informed consent, but rulings on motions in limine do not preserve error for appellate review. *See Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984). To preserve error, appellants were required to seek to admit the evidence during the evidentiary portion of the trial and to obtain an adverse ruling. *See* Tex. R. App. P. 33.1(a). This appellants did not do.

[17] Appellants contend the trial court compounded its error on informed consent evidence during Dr. Cohen's testimony. Because Dr. Cohen referred to informed consent, appellants contend that the trial court erred by not allowing their request to introduce evidence that would have explained Dr. Cohen's references. But, the trial court stated that it would allow appellants to provide evidence to prevent the jury from being "left with the impression that Dr. Dolce did something wrong in not giving a consent form."

**CONCLUSION**

Having overruled appellants' issues, we affirm the judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   January 25, 2008